WESTERN UNION TEL. CO. v. BOSTON SAFE DEPOSIT & TRUST CO.

BOSTON SAFE DEPOSIT & TRUST CO. v. WESTERN UNION TEL. CO.

(Circuit Court of Appeals, Second Circuit. November 18, 1901.)

Nos. 13, 14.

1. MORTGAGE FORECLOSURE—CONTRACTS OF RECEIVER.

A contract made by a receiver appointed in a foreclosure suit, with the approval of the court, leasing property involved in the suit pending its sale, is binding on the mortgagee, although it is not a formal party thereto.

**2. SAME—LEASE OF PROPERTY BY RECEIVER—RIGHTS OF LESSEE.**

In a suit to foreclose a mortgage on the property of a telegraph company, the mortgagee claimed, as included in the mortgage under an after-acquired property clause, six wires, which had been strung on the poles of the mortgagor by a second company. A receiver appointed in the suit took possession of the property, and leased the same to complainant, who paid rental therefor. On final hearing, the owner of the six wires was adjudged entitled to remove the same, but on its application they were permitted to remain until the sale, on its giving a bond to the mortgagee for the payment of rental, which it subsequently paid to the mortgagee. *Held*, that the fund so received belonged to complainant as lessee.

**3. TRUSTS—RELATION OF TRUSTEE TO THIRD PARTIES.**

Defendant, which was mortgagee of a telegraph line and complainant in a suit to foreclose the mortgage, received a sum paid by a second telegraph company, under an order of the court, as rental for the use of the poles for certain of its own wires during the pendency of the suit. The receiver appointed in the suit had previously, with the approval of the court, leased the line, pending the suit, to complainant, without any reservation as to the wires of the second company, which were claimed by defendant as included in the mortgage, and received the rental therefor. Defendant refused to pay over to complainant the sum so received, and complainant recovered the same by suit. *Held*, that defendant, while trustee for the mortgagee bondholders, was not a trustee of the fund so received in such sense that it was entitled to deduct therefrom the expenses incurred in defending the suit, but that as to complainant it was merely a depositary, and chargeable with the costs resulting from its wrongful refusal to account, the same as any other litigant.

In Error to the Circuit Court of the United States for the Southern District of New York.

See 87 Fed. 788; 104 Fed. 580.

William G. Wilson, for Boston Safe Deposit & Trust Co.
Rush Taggart, for Western Union Tel. Co.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge.    If the Western Union Telegraph Company was entitled to all revenues arising from the use of the line of poles from Cleveland to Chicago for supporting the six wires strung thereon by the Bankers' & Merchants' Telegraph Company, we are unable to doubt that it was entitled to the recovery adjudged to it by the decree of the court below.    The question depends upon the true meaning of the agreement of July 10, 1885. The agreement, in effect, constituted the Western Union Telegraph Company a lessee of the mortgagee to take possession of the mortgaged property and manage and operate it pending a foreclosure sale.    By its terms the Western Union Telegraph Company was to pay a specified sum in the nature of rental for the property, and was to receive for its own benefit all the revenues and profit.    The agreement having been made with the approval of the court by the receiver appointed in the foreclosure action, the mortgagee was fully bound, although not a formal party to the instrument.    Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815.    It was undoubtedly the meaning and purpose of that agreement to secure to the Western Union Telegraph Company, for the time therein

mentioned, the enjoyment, not only of all the revenues and profits which it might be able to derive from the possession and control of the property described in the mortgage made by the American Rapid Telegraph Company, as in esse, but also all which it might be able to derive from the possession and control of the rest of the property which was claimed by the mortgagee to be subject to the lien of the mortgagee.  The mortgagee claimed that the line of poles from Cleveland to Chicago, and all the wires strung thereon, among them the six wires which had been strung by the Bankers' & Merchants' Telegraph Company, were included in the grant to the mortgagee, under those provisions which made the mortgage a lien upon after-acquired property.  Pursuant to the agreement the Western Union Telegraph Company was promptly put into possession of the line of poles, and four of the ten wires strung thereon, but, the right of the mortgagee to hold and retain the six strung wires being in dispute, possession of those wires was not specifically turned over to the Western Union Telegraph Company.  Subsequently, in an action in equity brought by the mortgagee to determine, among other things, whether the poles and the strung wires thereon, including the six wires, were its property, because subject to the grant in the mortgage, or whether they were the property of the United Lines Telegraph Company as the successor in title to the Bankers' & Merchants' Telegraph Company, and in decreeing a foreclosure sale under the mortgage, the court reserved to the United Lines Telegraph Company the privilege of removing the six wires within a specified time.  As a condition of extending the time for the removal of the wires, the court, after hearing the parties, made an order that the United Lines Telegraph Company secure by bond the payment of a specified sum, and that company executed the bond and retained the use of the poles for the support of the six wires until a sale under the decree of foreclosure.  If it had been adjudged that the six wires belonged to the mortgagee, the Western Union Telegraph Company would have been entitled to the control and possession of them, as well as of the poles on which they were strung, and to collect and receive as its own their earnings and revenues until the foreclosure sale.

The fund in controversy is the amount paid upon the bond by the United Lines Telegraph Company to the mortgagee.  If the mortgagee had not been named as the obligee in the bond, there would hardly be color of plausibility to its present contention that it is entitled to the money which the United Lines Telegraph Company promised to pay for the privilege of retaining the wires on the poles.  But when it is considered that the bond was, in substance, an agreement to pay rent for the temporary use of property which the Western Union Telegraph Company was entitled to possess and control, and the mortgagee was designated as the obligee because the bond was given as a proceeding in the suit, and the Western Union Telegraph Company was not a party to the suit, there seems to be no reason for regarding it as an obligation, intended exclusively for the benefit of the mortgagee.  We think it represents moneys which equitably belonged to the West-

ern Union Telegraph Company, and that the court below did not err in so deciding.

By the decree of the court below the fund in controversy was charged with the payment to the mortgagee of its expenses in the present suit, amounting to $1,159.27, and the balance only was awarded to the Western Union Telegraph Company. This seems to have been done upon the theory that the mortgagee was a trustee, and as such entitled to be reimbursed for expenses incurred in good faith in the administration of its trust. A trustee seeking the direction and protection of the court as to the execution of his trust is entitled to his costs out of the trust fund, and this irrespective of the circumstance whether he occupies the position of a plaintiff or a defendant. Taylor v. Glanville, 3 Madd. 176; Curteis v. Candler, 6 Madd. 123; Morrell v. Dickey, 1 Johns. Ch. 133; Wood v. Vandenberg, 6 Paige, 278. And, if trustees are brought before the court as necessary parties by strangers, they are entitled to their costs if they disclaim all interest or yield, but if they contest the suit they must, upon failure, pay costs like other parties. These are the rules when the suit is in respect to the trust fund created by an express trust. 2 Perry, Trusts (4th Ed.) § 891. The only relation which the mortgagee sustained towards the Western Union Telegraph Company was that of a depositary which had received a sum belonging to the latter, and refused to pay it over, claiming that it belonged to itself. The mortgagee was a trustee for other persons, the holders of the mortgage bonds, and it was its duty to protect any fund belonging to them. It ought not, however, to be permitted to exonerate them at the expense of the party to whom the fund belonged from the consequences of its own unwarranted refusal to account. The case is one where the trustee has no better footing than any ordinary plaintiff or defendant, "for the circumstances of the trust cannot be allowed to affect the interests of a third person." Lewin, Trusts (Dale's 10th Ed.) § 1201.

The decree should be modified in respect to this allowance, and otherwise affirmed, and the case is remitted to the court below, with instructions accordingly. Costs of the cross appeals are allowed to the Western Union Telegraph Company.

### On Application for Rehearing.

The application for a rehearing is based upon the ground that the decision of the court was made under a misapprehension of one of the controlling facts of the case, to wit, that the Western Union Telegraph Company was "promptly put into possession" of the line of poles. It is true that the opinion incorrectly states the fact; but the fact is of no significance, except as showing the practical construction of the agreement of July 10, 1885, by the parties to it immediately after its execution, and thus bearing upon the meaning of that agreement. If the lessor had promptly put the lessee into possession of the line, it would have evinced quite conclusively the understanding of the parties that the line was included in the leased property. The court was led into an error by assuming that the

order in the foreclosure suit, made July 23, 1885, whereby the lessee was "let and hereby put into immediate possession" of the line of poles (excepting the six wires), was carried into effect; but a further examination of the record shows that the lessee did not actually obtain possession until March, 1889. In view of the orders made in the foreclosure action upon the consent of the mortgagee, it is not important that the lessee did not in fact obtain possession. The proceedings in that suit show that the mortgagee did all in its power to put the lessee into possession. They show the recognition by the mortgagee that the lessee was entitled to the possession of the line, and the rentals accruing from its use during the term of the agreement.

The application for a rehearing is denied.